IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON

| | |
|---|---|
| IN RE CORRECTCARE DATA BREACH LITIGATION | Case No. 5:22-319-DCR |

**PLAINTIFFS' RESPONSE TO COURT'S SEPTEMBER 9 ORDER, AND IN FURTHER SUPPORT OF FINAL APPROVAL OF THE SETTLEMENT**

Plaintiffs hereby tender their response to the issues raised in the Court's Order of September 9, 2024. [Record No. 110.]

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 29, 2024, the Court granted preliminary approval to the parties' proposed class action settlement. [Record No. 87] Pursuant to that order and the Settlement Agreement, August 27, 2024 was set as the deadline for the filing of claim forms by Settlement Class Members, and August 30, 2024 was established as the deadline for the filing of both objections and requests for exclusion. As set forth in the supplemental declaration of Cecily G. Uhlfelder (the "Uhlfelder Decl.") submitted herewith, there have been 105,228 claims, fourteen objections, and ten requests for exclusion filed as of these respective deadlines.[1] *See* Uhlfelder Decl. ¶ 19. At least 7,904 of those claims appear to originate from correctional institutions. *Id.*

---

[1] One of the objectors, Israel Silva, apparently did not file his objection with the Court in accordance with the required objection procedures. [Record No. 86-1, at 24–25]. Mr. Silva's objection is simply that he believes he should be compensated at least $10,000 for his injuries related to the Data Breach. But the Settlement provides class members with the ability to claim up to $10,000 in out-of-pocket expenses if they can

On September 9, 2024, the Court issued an order requiring Plaintiffs to respond to the objections on or before September 13, 2024. [Record No. 110.] Specifically, the Court stated that it had received several communications from possible class members who claimed they did not receive sufficient notice of the settlement. *Id.* The Court also inquired as to what steps were taken to provide notice to currently incarcerated individuals. *Id.* Plaintiffs now respond as follows.

## II. ARGUMENT

### A. Notice to the Settlement Class Was Proper.

The objections offer no valid basis for denying final approval of the Settlement. The primary complaint raised in the objections of Lawrence Halbert [Record No. 102], Daniel Reynoso [Record No. 103], and Sean Hollins [Record No. 104] is essentially that Settlement Class Members did not receive direct notice of the Settlement.

Preliminarily, due process does not require that class notice be mailed directly to every individual who may be a putative class member, or that every class member otherwise receive direct notice. Instead, Fed. R. Civ. P. 23(e)(1)(B) requires a district court that has approved a class action settlement to "'direct notice in a *reasonable manner* to all class members who would be bound by the proposal.'" *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (quoting Fed. R. Civ. P. 23(e)(1)(B)) (emphasis supplied). Neither that rule nor due process requires "individual notice to every

---

support those claims with sufficient documentation. *Id.* at 21. If Mr. Silva has $10,000 in out-of-pocket expenses, then the Settlement provided him with an avenue to recover that amount. In consultation with Kroll, Class Counsel has confirmed that Mr. Silva did not submit a claim.

3

member of the class in all circumstances." *Frank v. Tchrs. Ins. & Annuity Ass'n of Am.*, 71 Ill. 2d 583, 594, 376 N.E.2d 1377, 1381 (1978). The notice "must 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Minter v. Wells Fargo Bank, N.A.*, 283 F.R.D. 268, 275 (D. Md. 2012) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)).

This standard under Fed. R. Civ. P. 23(e)(1)(B) is "a practical one…and does not require that notice be provided to every single class member if the circumstances would make such an expectation unreasonable and impracticable." *Minter,* 283 F.R.D. at 275. *See also Fidel,* 534 F.3d at 514 ("Due process does not…require *actual* notice to each party intended to be bound by the adjudication of a representative action.") (citations omitted; emphasis in original); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) ("Due process does not require that every class member receive notice"); *In re Merrill Lynch Tyco Rsch. Sec. Litig.,* 249 F.R.D. 124, 133 (S.D.N.Y. 2008) ("Notice [of a class action settlement] need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.") (citing *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir. 1988)).

Here, the Notice program was indeed the best practicable under the circumstances. It was designed and implemented in consultation with Kroll

Settlement Administration ("Kroll"), an experienced administrator with significant experience in this area, to meet the standards of due process and Rule 23. Specifically, notice was disseminated here in the following manners:

**First,** direct notice was mailed to *all* known Settlement Class Members. In preparation for the notice program, Kroll received from CorrectCare three massive data files that, after a de-duplication process resulted in the creation of 572,453 unique records.[2] This included the same records that were utilized by CorrectCare when it initially mailed notification of the data security incident in November of 2022. [Record No. 99-2 at ¶ 7.] After running these records through the United States Postal Service's National Change of Address database – and conducting searches for persons without a full mailing address – Kroll mailed summary notices to 391,449 addresses. [*Id.* at ¶ 8.]

**Second,** because the parties were aware that the number of known Settlement Class Members being mailed direct notice (391,449) was less than the total estimated number of class members (approximately 646,701), they ensured that the notice plan implemented by Kroll utilized various other methodologies to notify the class. As described in the August 29, 2024 declaration of Cecily G. Uhlfelder, this supplemental notice included online display notice, google search advertisements, social media advertisements, and a press release. [Record No. 99-2 at ¶¶ 11-19.] This targeted media, much of which was provided in both English and Spanish, was specifically

---

[2] The class list Defendant provided Kroll consisted of 640,871 records, which was reduced to 572,453 unique individuals after deduplication. [Record No. 99-2, ¶ 7.]

5

designed to target currently incarcerated and formerly incarcerated individuals, as well as the family members or loved ones of those individuals.

This outreach was successful. Direct notice was sent to approximately 68% of the Settlement Class. The supplemental targeted ads received over 29.4 million impressions and, in combination with the direct notice program, ultimately reached an estimated 84.8% of the Settlement Class—well exceeding the Federal Judicial Center Guidelines.[3] This far-reaching notice publication program was created with the goal of not only reaching the individual Settlement Class Members but also reaching those connected to them, who could, in turn, pass on the information to the incarcerated persons and otherwise foster organic notice through conversations about the advertisements and their content. And, in fact, several of the correspondences filed with the Court reference the fact that the individuals writing did find out about the Settlement from either family members who received mail on their behalf, or through word of mouth via other prisoners. [*See* Record No. 98, 102]. Contrary to the assertion that this demonstrates a flaw in the Notice Program implemented in this case, it speaks to the success of the notice program's broad reach across the targeted population, and its ability to provide notice to a wide subset of a difficult to reach population.

---

[3] The Federal Judicial Center Guidelines provide that a notice program that reaches 70% of targeted class members satisfies due process and is considered a high percentage and the "norm" of a notice campaign. Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010). *See also Dick v. Sprint Commun. Co. L.P.,* 297 F.R.D. 283, 292 (W.D. Ky. 2014) (finding notice adequate where it reached approximately 87% of class members).

The number of claims submitted is further confirmation of the successful reach of the Notice Program here. As noted above, over a hundred thousand claims have been received by the Settlement Administrator, demonstrating that a significant portion of the Settlement Class were notified of the Settlement and were able to submit claims for benefits within the clearly published deadlines. This reflects a claims rate of more than 18.4%, which is well in excess of claims rates in typical data breach settlements. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (making the following observation in granting final approval to a data breach class action settlement: "the response rate from the Class has been relatively low. Only about 1.8% of the Settlement Class Members have submitted claims…Plaintiffs represent that this percentage compares favorably to the claims rates of approximately 0.2% and 0.23% in the *In re Home Depot* and *In re Target* data-breach actions, respectively.") (Koh, J.); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate . . . is on par with other consumer cases, and does not otherwise weigh against approval."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *9 (N.D. Ohio Aug. 12, 2019) (granting final approval even though "the claims rate was somewhat low," and recognizing the challenges associated with "eliciting class member response where notice is not individually addressed, where the recovery amount is limited, and where class members may not recall a life event

7

as insignificant as eating at Sonic").[4] This is further evidence the notice program satisfied the constitutional requirements of due process.

   B. **The Settlement Class Members who Submitted Correspondence to the Court requesting to submit a Claim or Opt-Out will be Permitted to do so.**

Aside from the complaints about the notice program, several of the communications received by the Court merely requested that the class member be allowed to make a claim for Settlement Benefits. *See* Correspondence from William L. Nelson [Record No. 98]. Settlement Class Counsel has provided the information of these Class Members to the Settlement Administrator who will work with them to ensure that they have the opportunity to submit a claim for review. The Parties have agreed to allow these Class Members' late claims.

The communication received from Lucille Harrell [Record No. 101] appears to be a request to opt-out of the Settlement, which she also sent to the Settlement Administrator. Class Counsel has confirmed that Ms. Harrell's Opt-Out request has been received, and she is included on the list of Opt-Outs provided to the Court.

---

[4] And the fact that the number of objections and opt-out requests as compared to the number of claims filed (and to the size of the class) likewise supports the approval of the settlement. *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 500 (E.D. Mich. 2008) ("…if only a small number of objections to a class action settlement are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2671105, at *7 (D. Minn. Sept. 18, 2006) ("The lack of objections, the small number of opt-outs, and the substantial number of claims filed reflects strong approval for the settlement.").

### C. The Objections to the Settlement on the Grounds that the Settlement is Not Good Enough or Should be Bigger Lack Merit.

The basis of the objection of Ammon Ra Samrall [Record No. 105], and Karsten Keelen [Record No. 107] essentially argue that the Settlement is not enough. No settlement of this size and scope will satisfy each and every Class Member. To the extent that Class Members are unhappy with the relief provided and believe that they are entitled to additional compensation, they were provided an opportunity to simply opt out of the Settlement and pursue claims individually. *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 700 (S.D. Fla. 2014) ("[T]o the extent that these objectors believe that they are entitled to additional relief due to unique cases, they were entitled to opt out of the settlement.").

Courts have repeatedly rejected objections premised on the notion that the settlement recovery should have been "more" or "better." *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 321–22 ("In objecting to the relief provided under the Settlement, none of these Settlement Class Members adequately take into account the risks and delays involved in proceeding to summary judgment or trial."); *Hughes v. Microsoft Corp.*, No. C93-0178C, 2001 WL 34089697, at *10 (W.D. Wash. Mar. 26, 2001) ("An objection that the settlement 'could have been better . . . does not mean the settlement presented [is] not fair, reasonable or adequate.'") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1998)). "Because '[s]ettlement is the offspring of compromise' the appropriate inquiry for a court reviewing a settlement pursuant to Rule 23(e) is 'not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *Id. See also Yaeger*

9

*v. Subaru of Am., Inc.*, No. 1:14-cv-4490, 2016 WL 4541861, at *17 (D.N.J. Aug. 31, 2016) (rejecting objections which suggested that the court "should insert other, more favorable terms into the proposed settlement" and recognizing that "[t]here is no middle ground of inserting or deleting terms at the request of an objector based on the judge's conception of what would be more fair, reasonable, or adequate."); *see also Ryder v. Wells Fargo Bank, N.A.*, No. 1:19-CV-638, 2022 WL 223570, at *2 (S.D. Ohio Jan. 25, 2022) (rejecting an objection that "generally assert[ed] that the payment amount . . . is too low give[n] her individual experience with [the defendant]" where the objector did "not include any documentation to support her claim that she [] is due any amount more than she would receive under the Settlement," and also where the objector "had the ability to opt out of the Settlement if she believed she should receive a higher individual payment from [the defendant] than that made available under the Settlement) (citing *Rosado v. eBay, Inc.*, No. 5:13-cv-04005, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016)).

When the benefits of this $6.49 million non-reversionary common fund Settlement are compared to the risks of the litigation (including the not insubstantial risk that even a certified class would be decertified – *see, e.g., In re Marriott Int'l, Inc.*, No. 22-1744, 2023 WL 5313006, at *1 (4th Cir. Aug. 18, 2023)), added expenses, and time and effort associated with continued litigation, it becomes clear the Settlement merits final approval and the objections based on the alleged inadequacy of the Settlement relief should be overruled.

*   *   *   *

10

For all these reasons, the Court should overrule the objections, find that the notice program provided the best notice practicable under the circumstances, and grant final approval to the Settlement.

Dated: September 13, 2024

*/s/J. Gerard Stranch, IV*
J. Gerard Stranch, IV, *pro hac vice*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

Benjamin F. Johns
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380
bjohns@shublawyers.com
sholbrook@shublawyers.com

Lynn A. Toops, *pro hac vice*
**COHEN & MALAD LLP**
One Indiana Square Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

Gary M. Klinger, *pro hac vice*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

I, J. Gerard Stranch, IV, hereby certify that I caused the foregoing **PLAINTIFFS' RESPONSE TO COURT'S SEPTEMBER 9 ORDER, AND IN FURTHER SUPPORT OF FINAL APPROVAL OF THE SETTLEMENT**, and all materials related thereto, to be filed using the Court's EM/ECF system on the date below, thereby causing it to be served upon all counsel of record in this case.

Dated: September 13, 2024

Respectfully Submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV